United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ORION LABS TECH, LLC,

Plaintiff,

v.

TALKDESK, INC.,

Defendant.

Case No.  25-cv-05045-VKD

**ORDER RE DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Re: Dkt. No. 56

Plaintiff Orion Labs Tech, LLC ("Orion Labs") sues defendant Talkdesk, Inc. ("Talkdesk") for infringement of seven patents: U.S. Patent No. 10,110,430 ("the '430 patent"); U.S. Patent No. 10,462,003 ("the '003 patent"); U.S. Patent No. 10,924,339 ("the '339 patent"); U.S. Patent No. 10,897,433 ("the '433 patent"); U.S. Patent No. 11,127,636 ("the '636 patent"); U.S. Patent No. 11,258,733 ("the '733 patent"); and U.S. Patent No. 11,328,130 ("the '130 patent") (collectively, "the asserted patents").  Dkt. No. 54 ¶ 1.

Talkdesk now moves to dismiss Orion Labs's first amended complaint pursuant to Rule 12(b)(6), arguing that the asserted patents are invalid because they claim ineligible subject matter under 35 U.S.C. § 101.  Dkt. No. 56.  Orion Labs opposes the motion.  Dkt. No. 64.  Upon consideration of the moving and responding papers, as well as the oral arguments presented, the Court grants in part and denies in part the motion to dismiss.

## I.    BACKGROUND

### A.    Overview of the Asserted Patents

In this action, Orion Labs contends that Talkdesk infringes, directly and indirectly, "one or more claims" of each of the asserted patents by using, selling, offering for sale, providing,

supplying, or distributing "intelligent digital agents," including the Talkdesk CX Cloud, Talkdesk Autopilot, Talkdesk Copilot, Talkdesk Studio, and Talkdesk Voice IVR virtual agent application. Dkt. No. 54 ¶¶ 17-23. For convenience, the Court groups the asserted patents as Orion Labs has done in its opposition. *See* Dkt. No. 64 at 1.

### 1. '430, '003, and '339 patents ("Intelligent Agent Patents")

The '430 patent issued on October 23, 2018, and claims priority to a provisional application filed on May 27, 2015. *See* '430 patent, cover page. The '003 patent issued on October 29, 2019 and is a continuation of the '430 patent. *See* '003 patent, cover page. The '339 patent issued on February 16, 2021 and is a continuation of the '003 patent. *See* '339 patent, cover page. Orion Labs collectively refers to these related patents as the "Intelligent Agent Patents." Dkt. No. 64 at 1.

According to their shared specification, these patents claim "[s]ystems, methods, apparatus[es] and software [that] enable intelligent agent features for user nodes that are members of a communication group." '430 patent, abstract.[1] The specification explains that while personal communication devices, such as cell phones, "provide an efficient way for users to communicate without being in the same physical location," "these devices often require the user to provide multiple inputs and preferences for each of the communications before the communications can take place." *Id.* at 1:21-26. If a user of one of these devices is "busy performing other tasks, it is often difficult to interface with the device (e.g., in changing environments, locations and conditions) . . . and may distract the user from a current task or situation." *Id.* at 1:30-34. As alleged in the operative complaint, the Intelligent Agent Patents purport to address this problem by providing "intelligent agents instantiated as virtual assistants" in a "communication group" that are "equipped with the ability to record and audit group communications" and provide other "ad hoc services" to the group. Dkt. No. 54 ¶ 36; *see also* '430 patent at 1:37-55.

Collectively, the Intelligent Agent Patents have 60 claims. Orion Labs contends that Talkdesk infringes "at least claims 1, 5, 13, and 17 of the '430 patent," "at least claims 1, 4, 6, and

---

[1] For convenience, the Court cites only to the specification of the '430 patent.

United States District Court
Northern District of California

United States District Court
Northern District of California

15 of the '003 patent," and "at least claims 1, 4, 6, 15, and 18 of the '339 patent." Dkt. No. 54 ¶¶ 59, 105, 200.

Claim 1 of the '430 patent, which Talkdesk contends is representative of all claims in the asserted patents, *see* Dkt. No. 56 at 9, recites:

> 1. A method of managing a communication group, wherein the communication group comprises a plurality of personal communication member nodes, the method comprising:
>
> receiving instructions from at least one of the plurality of personal communication member nodes to instantiate an intelligent agent;
>
> instantiating the intelligent agent as a virtual assistant communication member node in the communication group; and
>
> the instantiated intelligent agent recording and auditing communications among and between the plurality of personal communication member nodes in the communication group.

'430 patent at 14:41-54.

Claim 1 of the '003 patent recites:

> 1. A method of managing a communication group, wherein the communication group comprises a plurality of personal communication member nodes, the method comprising:
>
> receiving instructions from at least one of the plurality of personal communication member nodes to:
>> instantiate an intelligent agent; and
>> where to instantiate the intelligent agent;
>
> instantiating the intelligent agent as a virtual assistant communication member node in the communication group; and
>
> the instantiated intelligent agent performing a service for one or more personal communication member nodes in the communication group.

'003 patent at 14:47-60.

Claim 1 of the '339 patent recites:

> 1. A method of managing a communication group, wherein the communication group comprises a plurality of personal communication member nodes, the method comprising:
>
> receiving instructions from at least one of the plurality of personal communication

United States District Court
Northern District of California

> member nodes to instantiate an intelligent agent;
>
> instantiating the intelligent agent as a virtual assistant communication member node in the communication group; and
>
> the instantiated intelligent agent transcribing communications among and between the plurality of personal communication member nodes in the communication group.

'339 patent at 14:47-60.

### 2.      '433 and '636 patents ("Bot Messaging Patents")

The '433 patent issued on January 19, 2021, and claims priority to a provisional application filed on March 27, 2017.  *See* '433 patent, cover page.  The '636 patent issued on September 21, 2021, and claims priority to a different provisional application also filed on March 27, 2017.  *See* '636 patent, cover page.  The '433 patent and the '636 patent are not technically related, but they name the same inventors and, as Orion Labs concedes, "their specifications are very similar."  Dkt. No. 64 at 11 n.15.  Orion Labs collectively refers to these patents as the "Bot Messaging Patents."  *Id.* at 1.

According to their very similar specifications, these patents claim "[m]ethods, apparatuses, and computing systems . . . for bot messaging" within a group of users.  *See* '433 patent, abstract.[2] The specifications explain that "[w]ith the worldwide proliferation of the internet," bots are increasingly used for a wide variety of tasks and services.  *Id.* at 1:14-49.  The specifications describe a need for "a new generation of messaging services that allow groups of users to interact with both user-oriented bots as well as group-oriented bots," especially in the context of "voice-activated services."  *Id.* at 1:51-54.  As alleged in the operative complaint, the Bot Messaging Patents purport to address this problem by "leveraging voice libraries for enhanced functionality" in a "group messaging environment."  Dkt. No. 54 ¶¶ 134, 230; *see also* '433 patent, abstract; *id.* at 1:58-2:4.

Collectively, the Bot Messaging Patents have 40 claims.  Orion Labs contends that Talkdesk infringes "at least claim 1 of the '433 patent" and "at least claims 1, 5, and 16-18 of the '636 patent."  Dkt. No. 54 ¶¶ 157, 253.  Talkdesk contends that claim 1 of the '433 patent is very

---

[2] For convenience, the Court cites only to the specification of the '433 patent.

similar to claim 1 of the '430 patent, and is representative of all claims in the Bot Messaging Patents. *See* Dkt. No. 56 at 12, 15; Dkt. No. 67 at 9. Claim 1 of the '433 patent recites:

> 1. A method comprising:
>
> receiving, by a group messaging service configured to manage audio messaging between a plurality of user nodes in a group comprising at least a user node, a second user node, and a bot software application member node, a message from the user node comprising recorded audio and including a request, a user node identifier that identifies the user node, and a group identifier that identifies the group;
>
> selecting a selected voice library from a plurality of voice libraries to process the recorded audio, a voice library including both a speech-to-text engine and a natural language unit configured to convert a received message into enhanced text in a format suited to processing by the bot;
>
> processing, by the selected voice library, the recorded audio to produce the enhanced text comprising the request;
>
> sending, by the group messaging service, the enhanced text to the bot;
>
> receiving, at the group messaging service, a reply from the bot, the reply comprising information indicating completion of the request; and
>
> sending, to the user node and the second user node, a group reply indicating completion of the request.

'433 patent at 18:56-19:13.

### 3.     The '733 Patent

The '733 patent issued on February 22, 2022, and claims priority to a provisional application filed on October 3, 2017, as well as another application filed on October 2, 2018. *See* '733 patent, cover page; *id.* at 1:6-13.

The '733 patent generally discloses a "group communication service" that uses bots to transcribe audio messages and deliver the transcribed content to one or more destination services. *Id.*, abstract. The specification explains that where users in a group "communicat[e] using a recorded audio message," they may be unable to directly communicate with certain "destination services" unless the audio recording is transcribed to text. *Id.* at 1:41-46. The specification asserts that "current solutions do not allow users to directly publish audio content to destination services when the audio content is received from a user node associated with a group in a group

communication service." *Id.* at 1:51-54. The operative complaint alleges that the '733 patent addresses this problem by using a bot to deliver transcribed audio messages from users in the group to an external platform. *See* Dkt. No. 54 ¶¶ 280-281; *see also* '733 patent at 1:59-2:6.

The '733 patent has 20 claims. Orion Labs contends that Talkdesk infringes "at least claims 1 and 5 of the '733 patent." Dkt. No. 54 ¶ 299. Talkdesk contends that independent claims 1, 8, and 15 of the '733 patent are very similar to claim 1 of the '433 patent, and that claim 1 of the '433 patent is representative of all claims in the '733 patent. Dkt. No. 56 at 16. Claim 1 of the '733 patent recites:

> 1. A method comprising:
>
> operating a group communication service, including:
>
> receiving user node communications from and distributing user node communications to members of a communication group, wherein the members comprise a plurality of user nodes;
>
> receiving an audio transcription request from a selected user node of the communication group;
>
> determining a bot node member of the communication group to launch based on an identifier of the communication group;
>
> launching the bot node member to deliver transcribed content messages to a destination service;
>
> receiving an audio content message from the one of the plurality of user nodes; and
>
> delivering a transcribed content message of the audio content message to the destination service via the bot node member.

'733 patent at 14:27-45.

**4.     The '130 Patent**

The '130 patent issued on May 10, 2022, and claims priority to a provisional application filed on November 6, 2017. *See* '130 patent, cover page.

The '130 patent generally discloses "systems, methods, and devices for providing real-time translation for group communications." *Id.*, abstract. The specification explains that while "[a]dvances in group voice communication technology" have enabled users to converse "without

having to be physically near one another," "it remains difficult" for users to converse "over distributed voice communication systems in scenarios" involving more than one language. *Id.* at 1:15-23. In such scenarios, translators are required, but this can "break down the flow and speed in which real-time group conversations take place." *Id.* at 1:23-26. The operative complaint alleges that the '130 patent addresses this problem by providing a system for real-time translation for members of a group with different preferred languages. *See* Dkt. No. 54 ¶ 324; *see also* '130 patent at 1:43-52.

The '130 patent has 20 claims. Orion Labs contends that Talkdesk infringes "at least claim 1 of the '130 patent." Dkt. No. 54 ¶ 343. Talkdesk contends that claim 1 of the '130 patent is representative of all claims in that patent. *See* Dkt. No. 56 at 19-20. Claim 1 of the '130 patent recites:

> 1. A method comprising:
>
> performing, at a remote management server configured for managing group communications between multiple communication devices, a process for providing real-time translation for group communications, including:
>
> registering a first communication device with the remote management server, including associating the first communication device with:
>
> a first language preference,
>
> a primary group communication setting identifying a first set of communication devices, and
>
> a secondary group communication setting identifying a second set of communication devices;
>
> receiving, from the first communication device, a speech input and a first device identifier for the first communication device;
>
> accessing an account log associated with the first communication device based on the first device identifier;
>
> determining a plurality of communication devices to distribute the speech input to based on the primary group communications setting from the account log;
>
> determining a preferred language associated with each of the plurality of group communication devices;

grouping each of the plurality of communication devices into one or more groups based on corresponding preferred languages, each group associated with a separate language;

for languages different from the first language preference, translating the speech input into a translated speech input corresponding to the preferred languages for each of the one or more groups prior to sending the speech input; and

sending the translated speech input to each communication device of the one or more groups.

'130 patent at 14:33-67.

### B.      Procedural Background

On November 27, 2024, Orion Labs filed a complaint for patent infringement against Talkdesk in the Eastern District of Virginia.  Dkt. No. 1.  On January 29, 2025, Talkdesk filed a motion to dismiss the complaint, or in the alternative, to transfer the case to the Northern District of California.  Dkt. No. 9.  Orion Labs agreed to transfer the case, and on June 13, 2025, the Virginia district court granted the parties' stipulated request to transfer venue to this District.  Dkt. Nos. 34, 35.

On July 14, 2025, Orion Labs filed its first amended complaint for patent infringement. Dkt. No. 54.  On August 4, 2025, Talkdesk filed the present Rule 12(b)(6) motion to dismiss.  Dkt. No. 56.  With the parties' consent, Judge Gonzalez Rogers, who was then presiding over this action, reassigned this action to this Court for all purposes, including trial and entry of judgment. 28 U.S.C. § 636; Fed. R. Civ. P. 72; Dkt. Nos. 70, 71.  The Court heard oral argument on the motion on December 9, 2025.  Dkt. No. 74.

## II.      LEGAL STANDARD

### A.      Rule 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims in the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory.  *Id*. (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).  On such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant.  *Id*.

A complaint should be dismissed for failure to state a claim if it fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555 (citations omitted). Moreover, the Court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Prager Univ. v. Google LLC*, No. 17-cv-06064-LHK, 2018 WL 1471939, at *3 (N.D. Cal. Mar. 26, 2018) (quoting *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam)). Nor does the Court accept allegations that contradict documents attached to the complaint or incorporated by reference, *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014), or that rest on "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

A contention that a patent claims ineligible subject matter is an affirmative defense. *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1289 (Fed. Cir. 2024). "[A] complaint may be dismissed based on an affirmative defense that 'clearly appears on the face of the pleading.'" *Id.* (quoting *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022)).

### B.  Patent Eligibility Under 35 U.S.C. § 101

"Eligibility under 35 U.S.C. § 101 is a question of law, based on underlying facts," *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018), "[b]ut not every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry," *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1360 (Fed. Cir. 2023) (quotation modified and citation omitted). "Like other legal questions based on underlying facts, [eligibility under § 101] may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law." *SAP Am., Inc.*, 898 F.3d at 1166 (citations omitted).

United States District Court
Northern District of California

The Patent Act provides that a patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof[.]" 35 U.S.C. § 101.  However, patent protection does not extend to claims that monopolize the "basic tools of scientific and technological work," and it is well settled that "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (quotation modified and citations omitted).  Courts must nonetheless "tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Id*. at 217. "At some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Id*. (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012)).  "Thus, an invention is not rendered ineligible for patent simply because it involves an abstract concept." *Id*.

Under the two-step framework described in *Alice*, the Court must first determine whether the claim at issue is "directed to a patent-ineligible concept." *Id.* at 218.  If so, then at step two, the Court must "examine the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Id.* at 221 (quoting *Mayo*, 566 U.S. at 72-73, 79).  Specifically, the Court must determine "whether the claim elements, individually and as an ordered combination, contain an inventive concept, which is more than merely implementing an abstract idea using well-understood, routine, and conventional activities previously known to the industry." *Chewy, Inc. v. Int'l Bus. Machs. Corp.*, 94 F.4th 1354, 1365 (Fed. Cir. 2024) (quotation modified and citation omitted).

In conducting an *Alice* analysis, a court need not address every claim of the asserted patents.  It may consider representative claims where other claims recited in a patent are "substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (citation omitted). The patent challenger who identifies a claim as representative of a group of claims bears the initial burden to make a prima facie showing that the group of claims are "substantially similar and linked to the same ineligible concept." *Mobile Acuity*, 110 F.4th at 1290 (internal quotation omitted).  Once this occurs, the burden shifts to the patent owner to present non-frivolous

arguments as to why the eligibility of the identified representative claim cannot fairly be treated as decisive of the eligibility of all claims in the group. *Id.* If the patent owner fails to meet its obligation to make non-frivolous arguments in opposition to the representative claim contention, it forfeits its right to argue that the claims in the group identified by the movant are patent eligible even if the representative claim is ultimately found to be ineligible. *Id.*

## III.    DISCUSSION

Talkdesk argues that all claims of all of the asserted patents are directed, with immaterial variations, to a single abstract idea: using an "intelligent agent" or "bot" to perform services, like recording, transcription, and translation, to facilitate communications between users in a group. *See, e.g.,* Dkt. No. 56 at 2. According to Talkdesk, the asserted patents rely on generic computer components and functionality to automate tasks that are otherwise performed by humans, using conventional and well-understood techniques. *Id.* at 4-5.

Orion Labs responds that the asserted patents claim concrete technical solutions to technical problems in electronic group communication systems, and it resists Talkdesk's efforts to characterize the methods and systems claimed as routine and conventional as of the patents' priority dates. Dkt. No. 64 at 1. Orion Labs also raises several procedural objections to Talkdesk's motion. *Id.*

The Court first addresses Orion Labs's procedural objections, and then considers the parties' patent eligibility arguments.

### A.    Orion Labs's Procedural Objections

Orion Labs argues that Talkdesk's motion is premature because it was filed "before any fact discovery or claim construction" and "present[s] a danger that a court will be persuaded to dismiss a case prior to truly understanding the patents." Dkt. No. 64 at 1. These arguments are wholly unsupported.

In its opposition, Orion Labs identifies no claim terms requiring construction, nor does it propose any constructions. At the motion hearing, plaintiff's counsel conceded that the Court may decide Talkdesk's motion without engaging in claim construction. Dkt. No. 77 at 51:24-52:7. With respect to discovery, Orion Labs correctly observes that whether something is well-

understood, routine, and conventional to a skilled artisan at the relevant time is a factual determination. Dkt. No. 64 at 2. However, as Talkdesk points out, Orion Labs identifies no disputes of fact that bear on the Court's consideration of Talkdesk's motion, nor does it explain what discovery it requires to oppose the motion. *See* Dkt. No. 64 at 1-3; Dkt. No. 67 at 1-2.

Accordingly, the Court is not persuaded that the motion cannot be resolved without claim construction or fact discovery.

### B.    Intelligent Agent Patents ('430, '003, and '339 patents)

Talkdesk argues that claim 1 of the '430 patent is representative of all claims of the Intelligent Agent Patents, which, collectively, are directed to the abstract idea of using a "virtual assistant" to perform services in a communication group, and that no inventive concept transforms that idea into a patent-eligible application. Dkt. No. 56 at 9-11. Orion Labs disagrees that claim 1 of the '430 patent should be treated as representative, and further disagrees that the Intelligent Agent Patents are directed merely to an unpatentable idea. Dkt. No. 64 at 8-11.

### 1.    Representative claims

Talkdesk has made a prima facie showing that claim 1 of the '430 patent is representative of all claims in that patent, as well as generally representative of all claims in the '003 patent and the '339 patent. Orion Labs disagrees with this characterization and argues essentially that all claims are patentably distinct and have "additional requirements" that "materially alter[] their comparative scope." Dkt. No. 64 at 8.

Having considered the claims themselves, the Court concludes that all independent claims of the Intelligent Agent Patents are essentially method claims[3] and have the same three elements: (1) receiving instructions from at least one "personal communication member node," (2) instantiating an "intelligent agent" as a "virtual assistant" and member node in a "communication group," and (3) using the intelligent agent to perform various functions and services for the members of the communication group. The Court has considered, in particular, claim 1 of the

---

[3] Some claims are drafted in "computer readable storage medium" format. *See* '430 patent, claim 7; '003 patent, claim 8; '339 patent, claim 8. However, the Court agrees with Talkdesk that such claims recite essentially the same limitations. *See, e.g.*, Dkt. No. 67 at 4 (comparing claims 1 and 7 of the '430 patent).

'003 patent and claim 1 of the '339 patent for purposes of assessing the differences between those patents and the '430 patent and finds only minor differences. These independent claims are substantially similar, differing principally with respect to the function or service performed by the intelligent agent, which include recording, auditing, transcribing, searching, and annotating communications.

As for the dependent claims, the Court agrees with Talkdesk that the additional limitations in the dependent claims do not materially alter the focus of the independent claims but merely add "token, post-solution steps, functionality, or technological environments." *See* Dkt. No. 56 at 9, 10, 11-12. For example, claim 5 of the '430 patent, claim 6 of the '003 patent, and claim 6 of the '339 patent add that a generic "management system" instantiates the intelligent agent in a communication group; claim 17 of the '430 patent adds that communications between the member nodes, including the intelligent agent, are encrypted and secure; claim 4 of the '003 patent and claim 4 of the '339 patent list the services the intelligent agent can perform; and claim 18 of the '339 patent adds generic storage for transcribed communications. Apart from summarizing, in multiple, lengthy footnotes, the additional limitations of each of the dependent claims, Orion Labs does not explain how these additional limitations are material to the eligibility analysis. *See* Dkt. No. 64 at 6-8.

Accordingly, the Court concludes that claim 1 of '430 patent is representative of all claims of the Intelligent Agent Patents.

### 2.    *Alice* Step One

At step one of the § 101 analysis, courts "evaluate the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter." *Trinity Info Media*, 72 F.4th at 1361 (internal quotations and citations omitted); *see also Alice*, 573 U.S. at 217. "Courts must ascertain the basic character of the [claimed] subject matter without describing the claims at such a high level of abstraction and untethered from the language of the claims that the claims would be virtually guaranteed to be abstract." *Trinity Info Media,* 72 F.4th at 1361 (internal quotations and citations omitted). "[W]hile the specification may help illuminate the true focus of a claim, when analyzing patent eligibility, reliance on the specification

United States District Court
Northern District of California

must always yield to the claim language in identifying that focus." *Id.* (internal quotations and citations omitted); *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 767 (Fed. Cir. 2019) (specification useful in illuminating whether the claims are directed to an abstract idea).

The parties appear to agree that claim 1 of the '430 patent is directed to using an intelligent agent to provide services to users within a communication group. *See* Dkt. No. 56 at 5; Dkt. No. 64 at 1, 9. Talkdesk argues that this is an abstract idea. Dkt. No. 56 at 6-8. Orion Labs disagrees, arguing that the Intelligent Agent Patents provide a technical solution to "then-known technical problems" in electronic group communications. Dkt. No. 64 at 4-5. Specifically, Orion Labs contends that these patents provide the following "[c]ritical and vital advances": (1) the instantiation of the intelligent agent "is immediate, no[] matter what the circumstances"; (2) the intelligent agent "is always fully and immediately functional"; (3) "the capabilities of the intelligent agent are not limited to those of possibly available humans"; and (4) the intelligent agent "is never fatigued or distracted." *Id.* at 5.

The Court agrees with Talkdesk that representative claim 1 is directed to an abstract idea. First, the "intelligent agent," which appears central to all claims, is claimed only generically and functionally—i.e., the intelligent agent is a "virtual assistant" that performs services. No structure or other implementing details are claimed.[4] The shared specification describes the intelligent agent in generic terms as "software" with "modules" for performing various functions, such as "voice recognition," "assistant," "audit," "recording," and "security." '430 patent at 7:12-16; 7:26-30; Fig. 2. Similarly, the claimed "personal communication [member] nodes" can be any type of sensor, device, or "computing system," *see id*. at 2:40-48; Fig. 1, and "communication groups" are merely groups of nodes that can communicate over any type of network or combination of networks, using any type of protocol or combination of protocols, *see id.* at 2:20-21; 2:59-3:30; 7:49-8:3.

---

[4] The specification indicates, and Orion Labs concedes, that an "intelligent agent" is the same as what is now commonly referred to as a "bot." *See* '430 patent at 7:38-41 ("Although the term intelligent agent is used herein, other terms may be applied instead, such as robot assistant, bot node, virtual assistant bot (vot), Echo node, virtual assistant node, and/or other terms."); Dkt. No. 77 at 40:18-24. Orion Labs does not contend that the inventors invented intelligent agents or bots.

Second, representative claim 1 recites a method comprising the following steps: (1) receiving instructions from at least one "personal communication member node," (2) instantiating an "intelligent agent" as a "virtual assistant" and member node in a "communication group," and (3) using the intelligent agent to perform "recording" and "auditing" services for the members of the communication group. '430 patent at 14:45-54. The claim does not state how these steps are implemented, and the specification instructs that they may be performed using any suitable computer or networking technology. *See, e.g.*, *id.* at 2:67-3:30; 7:57-8:3. No particular recording or auditing functionality is claimed; rather, the specification makes clear that the intelligent agent relies on generic recording and auditing software modules to perform the claimed services. *See, e.g., id.* at 8:57-9:4; 9:5-18.

Third, each of the purported technological advances Orion Labs says the Intelligent Agent Patents embody appears to be nothing more than the result of automating tasks humans could and would otherwise perform using any suitable software, computer, or networking technology as a tool. There is no real dispute that humans have long performed the tasks of recording, auditing, transcribing, annotating, and searching with respect to communications, whether written or oral, such as for example, a court reporter who transcribes the audio of a telephone conference call with multiple participants or searches for text within a transcript. According to Orion Labs, the intelligent agent of the asserted claims, unlike a human, is immediately available, always functioning, never fatigued or distracted, and can perform more quickly and accurately the recording, auditing, transcribing, annotating, and searching functions a human would otherwise perform. *See* '430 patent at 1:21-33; Dkt. No. 64 at 5. But such advantages are inherent in the use of computers generally. "'[C]laiming the improved speed or efficiency inherent with applying the abstract idea on a computer' [is] insufficient to render the claims patent eligible." *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364 (Fed. Cir. 2020) (quoting *Intell. Ventures I LLC v. Cap. One Bank (USA),* 792 F.3d 1363, 1367, 1370 (Fed. Cir. 2015)). Claim 1 recites no particular improvement in computer technology or networking technology that enables the benefits Orion Labs describes, but instead claims existing technology used as a tool to automate the claimed functions, thereby overcoming human limitations.

United States District Court
Northern District of California

15

Orion Labs argues, citing its expert's declaration, that the claims of the Intelligent Agent Patents are directed to "implementation of novel, purpose-built software functionality," Dkt. No. 64 at 9, but this assertion is not supported by the claims or the specification. As explained above, the steps of the method, including instantiation of the intelligent agent, are functionally claimed without the necessary specificity or concreteness. *See Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1302 (Fed. Cir. 2020) (claim "must identify 'how' that functional result is achieved by limiting the claim scope to structures specified at some level of concreteness, in the case of a product claim, or to concrete action, in the case of a method claim"); *SAP Am., Inc.*, 898 F.3d at 1167 (claim may be abstract when it lacks the "specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it"). Moreover, Orion Labs has not identified any claimed improvements in computer or networking technology. For example, there is no suggestion that the claimed intelligent agent is a technological improvement in bot technology, or that the claimed methods overcome technical difficulties in communication or networking technology. While a method that automates tasks previously performed by humans is not necessarily directed to an abstract idea, the methods claimed here merely use existing computer and networking technologies as tools in their usual and ordinary capacity to automate functions long-performed by humans. *See Trinity Info Media*, 72 F.4th at 1363-65 (rejecting argument that humans could not mentally engage in the "same claimed process" because they could not perform "nanosecond comparisons" and aggregate "result values with huge numbers of polls and members" and finding patent claims were directed to abstract idea of matching based on questioning); *Chewy*, 94 F.4th at 1366 (finding patent-ineligible claims "not directed to any challenges unique to computer networks, or specific improvements to the functionality of the computer itself"); *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada (U.S.)*, 687 F.3d 1266, 1279 (Fed. Cir. 2012) ("Using a computer to accelerate an ineligible mental process does not make that process patent-eligible.").

Orion Labs identifies no cases in which claims similar to those of the Intelligent Agent Patents have been found non-abstract at step one. It cites only to *McRO, Inc. v. Bandai Namco Games America Inc.*, 837 F.3d 1299, 1316 (Fed. Cir. 2016), without explanation or elaboration.

16

*See* Dkt. No. 64 at 10. *McRO* is distinguishable. The claims in that case were directed to a specific improvement in computer animation, i.e., the automated use of rules with particular characteristics to produce accurate and realistic lip synchronization and facial expressions in animated characters, whereas previously, an animator made subjective determinations regarding what an animated face should look like at different points in the animation. *McRO*, 837 F.3d at 1314. In finding the claims in *McRO* non-abstract, the Federal Circuit explained: "The computer here is employed to perform a *distinct process* to automate a task previously performed by humans." *Id.* (emphasis added). No such distinct process is claimed in the Intelligent Agent Patents, but only the functional result.

As representative claim 1 of the '430 patent is directed to the abstract idea of using an intelligent agent to provide services to users within a communication group, the Court now turns to the *Alice* step two analysis.

### 3.    *Alice* Step Two

At this second step, the Court "analyze[s] whether there is an 'inventive concept' that takes the claim into the realm of patent eligibility." *Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1361 (Fed. Cir. 2021) (citing *Alice*, 573 U.S. at 217-19). Specifically, the Court "determine[s] whether the claim elements, individually and as an ordered combination, contain an inventive concept, which is more than merely implementing an abstract idea using well-understood, routine, [and] conventional activities previously known to the industry." *Chewy*, 94 F.4th at 1365 (internal quotations and citation omitted).

Talkdesk argues that claim 1 of the '430 patent recites only the abstract idea of using an intelligent agent to provide services to users within a communication group without any inventive concept. Dkt. No. 56 at 8-9. Orion Labs counters that the elements of the claims, considered individually and as an ordered combination, demonstrate that the claims are directed to patent-eligible matter. Dkt. No. 64 at 10-11.

According to Orion Labs, the innovation claimed in the Intelligent Agent Patents is "[t]he creation and use of electronic communication groups with an intelligent agent(s) and the provision of voice, security, management operations, sub-grouping, search, transcription, and annotation

17

functions." Dkt. No. 64 at 10 (quoting Dkt. No. 54 ¶¶ 102, 197). Citing the operative complaint and its expert's declaration, Orion Labs argues that the patents claim a "specific improvement in inter and intra-group electronic communications" that "resulted in a device rooted in computer technology that improved then-existing technology." *Id.* (quoting Dkt. No. 54 ¶¶ 55, 102, 197). The Court disagrees. Orion Labs does not explain or describe what this specific improvement is, and its expert's supporting declaration is conclusory and likewise unsupported. Orion Labs does not claim to have invented intelligent agents or any of the other components claimed in these patents, and, as explained above, the specification makes clear that all such components are purely conventional. Likewise, Orion Labs does not explain or describe how the claimed method steps—receiving instructions, instantiating an intelligent agent, and using the intelligent agent to perform particular services—differ from conventional or well-understood techniques using generic computer and network technology. Orion Labs does not claim to have invented the computer or networking technology on which its claims rely, or even the software that allows the intelligent agent to perform the claimed recording, auditing, transcribing, searching, and annotating services. *See* Dkt. No. 77 at 44:9-46:18.

At the motion hearing, Orion Labs emphasized that, at the time of the invention, the intelligent agent itself was novel and not conventional, and therefore, its use in a communication group was also novel and not conventional. Dkt. No. 77 at 29:22-30:11, 33:5-34:2, 35:21-39:8. Given the above-referenced disclosures in the specification, however, the Court is not persuaded that combining a generically claimed intelligent agent with a similarly generically claimed communication group and using it to perform functionally claimed services amounts to significantly more than the abstract idea itself—i.e., using an intelligent agent to provide services to users within a communication group. *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018) ("If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea."); *see also Alice*, 573 U.S. at 225-26 ("[T]he claims at issue amount to 'nothing significantly more' than an instruction to apply the abstract idea . . . using some unspecified generic computer."); *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838

United States District Court
Northern District of California

18

F.3d 1253, 1262 (Fed. Cir. 2016) (finding no inventive concept where claim "simply recite[d] the use of generic features of cellular telephones . . . to implement the underlying [abstract] idea").

To the extent Orion Labs argues that the claims of the Intelligent Agent Patents contain an inventive concept because "the implementation of the intelligent agent software transforms any generic hardware that is used into a special-purpose computing system," Dkt. No. 64 at 10, this argument is unavailing, as merely installing unspecified software on a generic computer is insufficient to transform the generic computer into the "something more" than the abstract idea itself. *See Alice*, 573 U.S. at 226-27 (merely programming generic computer to perform "specific computerized functions" adds "nothing of substance" to the underlying abstract idea); *see also EON Corp. IP Holdings LLC v. AT & T Mobility LLC*, 785 F.3d 616, 623 (Fed. Cir. 2015) (noting that "special purpose computer" rationale of *In re Alappat*, 33 F.3d 1526, 1545 (Fed. Cir. 1994) has been superseded by the Supreme Court's decisions in *Bilski v. Kappos*, 561 U.S. 593 (2010) and *Alice*).

Accordingly, the Court concludes that none of the elements of representative claim 1 of the '430 patent, considered individually or as an ordered combination, contain an inventive concept sufficient to transform the claimed abstract idea of using an intelligent agent to provide services to users within a communication group into patent-eligible subject matter under § 101.

### C.      Bot Messaging Patents ('433 patent and '636 patent)

Talkdesk argues that claim 1 of the '433 patent is representative of all claims of that patent and all claims of the '636 patent, and that, like the Intelligent Agent Patents, these Bot Messaging Patents are directed to the patent-ineligible idea of using virtual assistants in group communications. Dkt. No. 56 at 12-13, 15. Orion Labs disagrees that claim 1 of the '433 patent is representative of all claims of both patents, and further disagrees that the Bot Messaging Patents are directed merely to an unpatentable idea. Dkt. No. 64 at 15.

#### 1.      Representative claims

Talkdesk has made a prima facie showing that claim 1 of the '433 patent is representative of all claims in that patent, as well as generally representative of all claims in the '636 patent. Orion Labs disagrees with this characterization on the basis that that all claims are patentably

19

distinct and contain "material limitations not present in other claims." Dkt. No. 64 at 15.

Having considered the claims themselves, the Court concludes that all independent claims of the Bot Messaging Patents are essentially method claims[5] and have some or all of the following elements: (1) a "group messaging service," including a "bot software application member node" (or "bot member" or "bot"), that (2) receives a request with recorded audio from a user in a group, directed to a bot, (3) determines the bot is a member of the group, (4) selects a voice library with speech-to-text and natural language processing capabilities "suited to processing by the bot," (5) processes the recorded audio to produce "enhanced text" or a "modified message," (6) sends the enhanced text or modified message to the bot, (7) receives a reply from the bot that the request is complete, and (8) sends a message notifying the user node or group that the request is complete. The independent claims of the Bot Messaging Patents are very similar. The principal difference between the two sets of claims is that the independent claims of the '433 patent recite general-purpose voice libraries, whereas the independent claims of the '636 patent recite bot-specific voice libraries. *See* '433 patent at 18:65-19:3; '636 patent at 19:13-19.

As for the dependent claims, neither party addresses these claims in any detail. *See* Dkt. No. 56 at 15-16; Dkt. No. 64 at 13, 14 nn.16, 17. For purposes of this order, the Court focuses on the only dependent claims asserted against Talkdesk in the operative complaint: claims 5, 17, and 18 of the '636 patent. With respect to dependent claims 5 and 18, the Court agrees with Talkdesk that the additional limitations these claims add to claim 1 and claim 16, respectively, of the '636 patent do not meaningfully distinguish the dependent claims from the independent claims for purposes of the eligibility analysis.[6] *See* Dkt. No. 56 at 15. The Court also agrees with Talkdesk that the additional limitations of dependent claim 17—specifying that an encoded audio message

---

[5] Some claims are drafted in the form of a "memory device" (or "computing system" comprising "a memory" or "a storage system") storing "instructions" that when executed, cause a "processor" to perform the steps of a method. *See* '433 patent, claims 10, 17; '636 patent, claims 10, 16. The Court agrees with Talkdesk that such claims recite essentially the same limitations as claim 1 of the '433 patent. *See* Dkt. No. 56 at 15.

[6] Claim 5 adds only "sending the message, by the group messaging service, to the plurality of user nodes in response to receiving the message." Claim 18 adds only "send the message to the plurality of user nodes in response to receiving the message." These dependent claims merely recite who receives the message. *See* Dkt. No. 64 at 14 n.17.

United States District Court
Northern District of California

United States District Court
Northern District of California

is decoded before being converted to enhanced text for execution by a bot—does not distinguish this dependent claim from the independent claims for purposes of the eligibility analysis. *See id.* at 15-16. Apart from summarizing, in two lengthy footnotes, the additional limitations of the dependent claims, Orion Labs does not explain how these additional limitations are material to the eligibility analysis. *See* Dkt. No. 64 at 13, 14 nn.16, 17.

Accordingly, the Court concludes that claim 1 of '433 patent is representative of all independent claims of the Bot Messaging Patents, and of dependent claims 5, 17, and 18 of the '636 patent.

### 2. *Alice* Step One

Talkdesk contends that claim 1 of the '433 patent, like claim 1 of the '430 patent, is directed to the abstract idea of using virtual assistants or bots in group communications. Dkt. No. 56 at 12. While Talkdesk acknowledges that claim 1 of the '433 patent differs from the Intelligent Agent Patents principally in that the message at issue is in the form of recorded audio that is converted to enhanced or modified text before delivery to the bot, it argues that the concept of translating information or data from one format to another to bridge computing components is abstract, and that the addition of limitations directed to this concept in the Bot Messaging Patents does not render them patent eligible. *Id.* at 12, 13-14.

Orion Labs responds that the Bot Messaging Patents claim advancements in bot technology. Dkt. No. 64 at 12. Specifically, Orion Labs explains that "[w]hile the then-current [i.e., March 2017] bots were primarily designed to merely provide information back to a requesting user, or in the case of general-purpose bots, to control devices," these two patents "enable bots to be incorporated into [communication] groups," which allows users in the group to interact with both user-oriented and group-oriented bots. *Id.* According to Orion Labs, and as asserted in the operative complaint, the Bot Messaging Patents claim "specific process[es] that improve a bot's functionality in a group setting," including processes for routing messages to bots, processing audio using voice libraries, speech-to-text, and natural language software modules, and managing replies. *Id.* at 12, 13, 15; *see also* Dkt. No. 54 ¶¶ 122, 124, 133-135, 218, 220, 229-231.

As before, the Court begins by considering the focus of the claimed advance over the prior

21

art. *See Trinity Info Media*, 72 F.4th at 1361. Construing the allegations of the operative complaint in Orion Labs's favor, the Court examines representative claim 1 of the '433 patent to determine whether it claims the advancement in bot technology that Orion Labs says it does.

As set forth above, claim 1 claims a method in which a group messaging service (1) receives a request with recorded audio from a user in a group, directed to a bot, (2) selects a voice library with speech-to-text and natural language processing capabilities "suited to processing by the bot," (3) processes the recorded audio to produce "enhanced text," (4) sends the enhanced text to the bot, (5) receives a reply from the bot that the request is complete, and (6) sends a message notifying the user node or group that the request is complete. It is not clear to the Court from the operative complaint or Orion Labs's briefing how claim 1 captures the purported advancement in bot technology. To the extent Orion Labs argues that merely using a bot in a group communication setting constitutes the purported advancement in bot technology, the Court agrees with Talkdesk that the purported advancement is no more than the abstract idea of using a bot in a particular environment (i.e., group communications), just as in the Intelligent Agent Patents. *See Affinity Labs of Texas, LLC*, 838 F.3d at 1259 ("[M]erely limiting the field of use of the abstract idea to a particular existing technological environment does not render the claims any less abstract."). However, Orion Labs appears to argue that claim 1 recites a *specific process* for improving the bot's functionality in the context of group communications. *See* Dkt. No. 64 at 15. In evaluating this contention, the Court starts with the language of the claim. The limitations of representative claim 1 are quoted and described in detail above, but the essential limitations can be summarized succinctly as: receiving a recorded audio message from a user in a group, converting the message to bot-friendly text, sending the message to the bot, receiving a reply from the bot indicating completion of the task requested in the message, and notifying the user or users that the request is completed. As it is not self-evident that a specific process for improving bot functionality is claimed here, the Court turns to the specification for further illumination.

With respect to the bot itself, the specification of the '433 patent makes clear that many general-purpose, user-specific, and voice-activated bots, with varying and extensive capabilities, already existed as of the priority date of the patent, and no particular type of bot is required for the

claim. *See* '433 patent at 1:18-49. Bots are described generically as "software applications for performing one or more tasks" that can be configured and incorporated in a "group messaging service." *Id.* at 4:45-52. The tasks performed by the bot—whether shared or user-specific—are described generically as "carr[ying] out one or more functions corresponding to recorded audio within the message." *Id.* at 11:26-28, 11:59-61. Similarly, with respect to the conversion of the recorded audio message, the specification simply assumes the existence of suitable voice libraries that include speech-to-text software and natural language processing software that converts the recorded audio to bot-friendly enhanced text. *See, e.g., id.* at 12:40-54, 13:50-14:3, 14:50-62. Enhanced text is merely text that is "clarified and simplified . . . into a form more suitable for presentation to a bot to execute." *Id.* at 12:64-66; *see also id.* at 14:18-19. In short, the specification confirms that Orion Labs does not claim anything specific about the bot itself, voice libraries, the process of converting the recorded audio message to a bot-friendly format, or the enhanced text itself. *See, e.g.*, Dkt. No. 77 at 45:8-22.

Having considered the claim language and the specification, the Court agrees with Talkdesk that representative claim 1 of the '433 patent does not claim any particular methodology for interacting with shared bots or user-specific bots in a communications group; it just claims receiving the user's message, converting it, sending it to the bot, receiving the bot's response, and notifying the user(s). *See* Dkt. No. 67 at 10. Claims 1, 10, and 16 of the '636 patent include additional steps for determining that the bot is a member of a particular group, but Orion Labs does not argue that these limitations are core to the claimed improvement in bot technology.

The Federal Circuit has consistently held that claims directed to encoding and decoding information or converting data from one format to another are abstract. *See, e.g.*, *directPacket Rsch., Inc. v. Polycom, Inc.*, No. 2024-1147, 2025 WL 1752247, at *4 (Fed. Cir. June 25, 2025) (method for receiving multimedia data stream, converting it to a different protocol, and transmitting converted data stream is abstract); *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1357 (Fed. Cir. 2023) (method for receiving, displaying, converting, storing, and transmitting digital video is abstract); *Adaptive Streaming Inc. v. Netflix, Inc.*, 836 F. App'x 900, 903 (Fed. Cir. 2020) (system for collecting incoming video in one compression format and

United States District Court
Northern District of California

transcoding it into another compression format for presentation to a device is abstract): *EasyWeb Innovations, LLC v. Twitter, Inc.*, 689 F. App'x 969, 970-71 (Fed. Cir. 2017) (message publishing system that accepts messages in multiple formats, such as by fax, telephone, or email, verifies message was sent by authorized sender, and converts to another format and publishes converted message is abstract); *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) (method of displaying images on a first display, assigning image codes to the images using a mathematical formula, and then reproducing the image based on the codes is abstract).  In addition, two district courts recently have reached the same conclusion in cases with claims that are very similar to claim 1 here: *Orbcomm Inc. v. Calamp Corp.*, 215 F. Supp. 3d 499 (E.D. Va. 2016) and *Novo Transforma Technologies, LLC v. Sprint Spectrum L.P.*, No. 14-cv-612-RGA, 2015 WL 5156526 (D. Del. Sept. 2, 2015).  In *Orbcomm*, the court held that a patent that claimed "a system that 1) receives wireless messages from a freight asset in a non-'industry standard freight message format'; 2) translates the wireless messages into an 'industry standard freight message format'; 3) transmits the translated message to a user; and 4) allows the user to send a translated message back to the freight asset" was directed to the abstract idea of translation.  215 F. Supp. 3d at 505-06.  The court reasoned that the claims merely recited a "process of gathering information and translating it between two or more incompatible formats."  *Id.* at 506.  Similarly, in *Novo Transforma*, the patent at issue claimed a "process for delivering messages from a sender to recipient over a communication network where the message is converted as necessary to an alternate format in order to enable delivery to a recipient that has a device that is not compatible with the format of the original message, and where an automatic notification is provided to the sender upon receipt of the message by the recipient."  2015 WL 5156526, at *3.  The court held that the patent also was directed to the abstract idea of translation.  *Id.*

Like the claims at issue in *directPacket Research*, *Orbcomm*, and *Novo Transforma*, representative claim 1 does not disclose a specific process for improving the functionality of the technology at issue (here, bot technology), but instead recites the essentially functional steps of "receiving," "selecting" and "processing" (i.e., "converting"), and "sending" a recorded audio message, followed by "receiving" notice of completion.  Claim 1 does not include any particular

24

United States District Court
Northern District of California

requirements for how these steps are performed. *See, e.g., Mobile Acuity*, 110 F.4th at 1292-93. While a specific process for improving the functionality of a bot in the context of group communications might well be a patent-eligible invention, no such specific process is claimed in the independent claims of the Bot Messaging Patents or in dependent claims 5, 17, and 18 of the '636 patent.

Accordingly, the Court concludes that the independent claims of the Bot Messaging Patents and dependent claims 5, 17, and 18 of the '636 patent are directed to an abstract idea. The Court now turns to the *Alice* step two analysis.

### 3. *Alice* Step Two

At this second step, the Court considers whether there is an "inventive concept" that transforms the abstract idea into a patent-eligible invention. Specifically, the Court "determine[s] whether the claim elements, individually and as an ordered combination, contain an inventive concept, which is more than merely implementing an abstract idea using well-understood, routine, [and] conventional activities previously known to the industry." *Chewy*, 94 F.4th at 1365 (internal quotations and citation omitted).

Talkdesk argues that the use of voice libraries to convert recorded audio messages to bot-friendly format in the context of group communications does not supply an inventive concept. Dkt. No. 56 at 14. Orion Labs counters that the elements of the claims of the Bot Messaging Patents, considered individually and as an ordered combination, demonstrate that the patents are directed to patent-eligible matter. Dkt. No. 64 at 16.

Orion Labs argues that the claims of the Bot Messaging Patents are inventive because, while the components and technology they employ existed in the prior art, those components and technology are used together and in an ordered combination that is both novel and unconventional. *Id*. As before, Orion Labs relies principally on the allegations of the operative complaint and its expert's declaration in support of this assertion. *See id.* (citing Dkt. No. 54 ¶¶ 154-55, 250-51). Specifically, Orion Labs asserts that the patents claim "a specific configuration of software in stand-alone devices" and the use of voice libraries to "generate enhanced text that allows bots to complete more advanced requests/processing tasks than those bots that were available in March of

25

2017." *Id.* (quoting Dkt. No. 54 ¶ 154). It further asserts that this "particular combination of components" improved bot technology, and that the claims should be understood as "directed to novel, purpose-built software functionality that does much more than what any 'off the shelf' bot could do." *Id.* Orion Labs does not make any distinct arguments regarding any "inventive concept" embodied in dependent claims 5, 17, and 18 of the '636 patent.

The Court disagrees for several reasons. First, representative claim 1 does not claim any "specific configuration of software"; rather, the claim recites, in purely functional terms, that the group messaging service is "configured to manage audio messaging between a plurality of user nodes in a group" and that the voice library is "configured to convert a received message into enhanced text in a format suited to processing by the bot." '433 patent at 18:57-59, 18:67-19:3. No specific software configuration is claimed. With respect to configuring a bot in the group messaging service, the specification describes this "configuring" as requiring little more than invoking an existing bot's unique identifier and/or address which are already included in one or more data structures (or are added by an administrator). *See id.* at 4:41-5:37, Fig. 2; *see also id.* at 7:27-53, Figs. 5A, 5B (shared bot with group identifier; user-specific bot with user identifier). The specification describes the identifiers, addresses, and data structures in generic terms. *See id.* at 5:3-7. Similarly, with respect to configuring a voice library, the specification describes the functioning of the voice library in essentially black-box terms. *See id.* at 12:40-54, Figs. 10, 11. The pre-existing functionality provided by conventional voice libraries, which already include speech-to-text and natural language processing, is all that is required to convert the recorded audio message to "enhanced text." *See id.* at 12:55-67. Apart from loading the voice library or libraries in a generic computing system, the specification does not identify any other "configuration" that is required.

Second, representative claim 1 does not claim the generation of enhanced text that allows bots to complete more advanced requests or engage in more complicated processing. As explained above, "enhanced text" is merely text that is "clarified and simplified . . . into a form more suitable for presentation to a bot to execute." *Id.* at 12:64-66; *see also id.* at 14:18-19. Neither the claim nor the specification discloses any particular simplification or clarification that

United States District Court
Northern District of California

enables the purported advancement Orion Labs advocates. To the contrary, the specification just *assumes* the existence of suitable voice libraries that include speech-to-text software and natural language processing software that converts a recorded audio message to "more suitable" enhanced text. *See, e.g., id.* at 12:40-54, 13:50-14:3, 14:50-62.

Third, Orion Labs does not explain how representative claim 1 can possibly be read to claim an "ordered combination" that produces "novel, purpose-built software functionality that does much more than what any 'off the shelf' bot could do." Such "purpose-built software functionality" is nowhere described in the specification. To the contrary, the specification states that a generic "computing device" "performs the processes of the present application," including the bot messaging process (Fig. 3), the messaging process using shared or per-user bots (Fig. 8), and the message flow process using voice libraries (Fig. 11). *Id.* at 17:16-18. This generic computing device may be "any sort of known computing device," and includes a generic processor "for executing device applications." *Id.* at 17:19-20, 17:56-58. Given that the claimed invention relies on components and technology that are utterly conventional, Orion Labs's failure to explain how the ordered combination of these components or the order of the claimed steps is inventive dooms its argument.

Finally, to the extent Orion Labs argues that using a bot with voice libraries in a group communication setting constitutes the purported innovation, *see* Dkt. No. 77 at 46:19-49:12, the claimed inventive concept is nothing more than the abstract idea itself. *See BSG Tech LLC*, 899 F.3d at 1290-91 ("If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea."); *see also Alice*, 573 U.S. at 225-26 ("[T]he claims at issue amount to 'nothing significantly more' than an instruction to apply the abstract idea . . . using some unspecified generic computer.").

Accordingly, the Court concludes that none of the elements of the independent claims of the Bot Messaging Patents or of dependent claims 5, 17, and 18 of the '636 patent, considered individually or as an ordered combination, contain an inventive concept sufficient to transform the claimed abstract idea into patent-eligible subject matter under § 101.

### D.      '733 Patent

#### 1.      Representative claims

Talkdesk has made a prima facie showing that claim 1 of the '433 patent is also representative of all claims in the '733 patent. In response, Orion Labs mistakes Talkdesk's argument on this point, construing it as an argument that claim 1 of *the '430 patent* is representative. *See* Dkt. No. 64 at 18-19. In any event, Orion Labs once again argues that all claims of the '733 patent are distinct for purposes of the eligibility analysis because each "contain material limitations not present in the other claims"—an argument that relies solely on a lengthy footnote summarizing the dependent claims. *Id.* at 18 n.20, 19.

Having considered the claims themselves, the Court concludes that all independent claims of the '733 patent have the following elements: (1) a "group communication service," that (2) receives an "audio transcription" request from a user node in a group, (3) determines a bot node member of the group to handle the request, (4) launches the bot node member, (5) receives an "audio content message" from the user node, and (6) delivers the transcribed message to a "destination service" "via the bot node member." '733 patent at 14:27-45. All independent claims of the '733 patent are nearly identical. While claim 1 of the '433 patent is similar in many respects to the independent claims of the '733 patent, claim 1 of the '433 patent has both different and additional limitations which make using it as a representative claim awkward here.

As for the dependent claims, neither party addresses these claims in any detail. *See* Dkt. No. 56 at 16; Dkt. No. 64 at 18 n.20. For purposes of this order, the Court focuses only on claim 5, the only dependent claim asserted against Talkdesk in the operative complaint. Claim 5 adds that the method of claim 1 includes delivering multiple transcribed messages to the destination service from multiple user nodes. '733 patent at 15:5-11; *see also* Dkt. No. 64 at 18 n.20 (describing claim 5 as "delivering a plurality of transcribed audio content messages to the destination service from multiple user nodes"). The Court agrees with Talkdesk that this additional limitation does not meaningfully distinguish dependent claim 5 from the independent claims for purposes of the eligibility analysis. *See* Dkt. No. 56 at 16.

Accordingly, the Court concludes that claim 1 of the '733 patent is representative of all

28

independent claims of that patent as well as dependent claim 5.

## 2. *Alice* Step One

Talkdesk argues that the claims of the '733 patent "do not meaningfully differ" from representative claim 1 of the '433 patent and are directed to the same abstract idea, albeit limited to a request for "audio transcription" rather than a generic request for the bot to perform a task. Dkt. No. 56 at 16. Orion Labs responds that the claims of the '733 patent are not directed to an abstract idea, but rather to "a distributed voice communication system that addresses the challenge of transcribing audio messages in a group communication system and delivering them to a destination service (with the identity of the individual user maintained)." Dkt. No. 64 at 19. Specifically, Orion Labs argues that the '733 patent discloses "a unique way to keep track of, transcribe, and maintain source identification for audio messages received in a group communication system using a bot node and a specific transcription process." *Id.* at 20 (citing Dkt. No. 54 ¶ 293). According to Orion Labs, the '733 patent is directed to a "specific process by which to improve a bot's functionality in a distributed voice communication system." *Id.* at 19.

The Court first considers the focus of the claimed advance over the prior art. *See Trinity Info Media*, 72 F.4th at 1361. Construing the allegations of the operative complaint in Orion Labs's favor, the Court examines representative claim 1 of the '733 patent to determine whether it claims the advancement in bot functionality that Orion Labs says it does.

As set forth above, representative claim 1 claims a method in which a group communication service receives an audio transcription request from a user node, locates and launches a bot node to handle the request, and receives an "audio content message" from the user node. After the audio content message is transcribed, the bot delivers the transcribed message to a "destination service." Notably, claim 1 does *not* claim a transcribing process, nor does it claim any step or component that associates or links the user's identity with the transcribed message delivered to the destination service.[7] In short, contrary to Orion Labs's argument, representative

---

[7] At most, claim 1 includes a limitation for determining the bot "based on an identifier of the communication *group*," not the user node making the request. *See* '733 patent at 14:36-38 (emphasis added). While some dependent claims include limitations that associate a user node IP address with a bot node IP address, *see, e.g.,* '733 patent, claims 2, 9, and 16, those dependent

claim 1 does not claim a method for "transcribing audio messages in a group communication system and delivering them to a destination service (with the identity of the individual user maintained)" or "a unique way to keep track of, transcribe, and maintain source identification for audio messages received in a group communication system using a bot node and a specific transcription process." *See* Dkt. No. 64 at 19, 20. Orion Labs offers no other explanation for how the invention claimed in the '733 patent "improve[s] a bot's functionality." *Id.* at 19.

In the Court's view, representative claim 1 is directed to using a bot in a group communication setting to deliver transcribed audio content messages to an external platform. As noted above, the Federal Circuit has held that merely converting data from one format to another, such as transcribing audio to text, is abstract. *See supra* sec. III.C.2; *see also Enco Sys., Inc. v. DaVincia, LLC*, 845 F. App'x 953, 957-58 (Fed. Cir. 2021) (method of converting audio to text and associating the text with corresponding video is abstract); *Ginegar LLC v. Slack Techs., Inc.*, No. 22-cv-00044-WHO, 2022 WL 2064978, at *10 (N.D. Cal. June 8, 2022) (method of automatically generating a transcript that combined text and audio messages exchanged in an instant message session was directed to abstract idea of "collecting, displaying, and manipulating data of particular documents").

Accordingly, the Court concludes that independent claims 1, 8, and 15, and dependent claim 5 of the '733 patent are directed to an abstract idea. The Court now turns to the *Alice* step two analysis.

### 3.    *Alice* Step Two

At this second step, the Court considers whether there is an "inventive concept" that transforms the abstract idea into a patent-eligible invention. Specifically, the Court "determine[s] whether the claim elements, individually and as an ordered combination, contain an inventive concept, which is more than merely implementing an abstract idea using well-understood, routine, [and] conventional activities previously known to the industry." *Chewy*, 94 F.4th at 1365 (internal quotations and citation omitted).

claims are not presently asserted against Talkdesk, and the Court does not consider them here.

30

Talkdesk does not address step two of the eligibility analysis in its opening motion, except perhaps implicitly by reference to its arguments regarding claim of the '433 patent. *See* Dkt. No. 56 at 16. Orion Labs counters that the "particular combination of hardware and software components" claimed in the '733 patent is inventive because, while the components and technology employed existed in the prior art, those components and technology are used together and in an ordered combination that is both novel and unconventional. Dkt. No. 64 at 20. Orion Labs relies exclusively on the allegations of the operative complaint and its expert's declaration in support of this assertion. *See id.* at 20-21, 21 n.22 (citing Dkt. No. 54 ¶¶ 296-297).

The Court is not persuaded that the claims of the '733 patent contain an inventive concept. First, as discussed above, the asserted innovation—maintaining the identity of the source of the message—is *not claimed* in any independent claim or in asserted dependent claim 5. Second, as Orion Labs appears to concede and as the specification makes clear, the "hardware and software components" on which the claims rely are generic and conventional. *See id.* at 20; '733 patent at 11:16-12:37, Fig. 7. Orion Labs fails to explain how the ordered combination of these components or the ordered combination of the claimed steps is inventive. In fact, the specification indicates that at least some of the claimed steps and processes may be performed in *any order*, including "in a synchronous or asynchronous manner, serially or in parallel, in a single threaded environment or multi-threaded environment, or in accordance with any other suitable execution, paradigm, variation, or combination thereof." '733 patent at 12:13-31.

To the extent Orion Labs argues that using a bot in a group communication setting to deliver transcribed audio content messages to an external platform is the inventive concept, this is nothing more than the abstract idea itself. *See BSG Tech LLC*, 899 F.3d at 1290-91 ("If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea."); *see also Alice*, 573 U.S. at 225-26 ("[T]he claims at issue amount to 'nothing significantly more' than an instruction to apply the abstract idea . . . using some unspecified generic computer.").

Accordingly, the Court concludes that none of the elements of independent claims 1, 8, and

United States District Court
Northern District of California

15, and dependent claim 5 of the '733 patent, considered individually or as an ordered combination, contain an inventive concept sufficient to transform the claimed abstract idea into patent-eligible subject matter under § 101.

### E.    '130 Patent

#### 1.    Representative claims

Talkdesk has made a prima facie showing that claim 1 of the '130 patent is representative of all claims in that patent.  Orion Labs again mistakes Talkdesk's argument on this point, construing it as an argument that claim 1 of the '430 patent is representative.  *See* Dkt. No. 64 at 23.  Orion Labs also argues that all claims of the '130 patent are distinct for purposes of the eligibility analysis because each "contain material limitations missing from other claims," again relying solely on a lengthy footnote summarizing the dependent claims.  *Id.* at 23 n.23.

Having considered the claims themselves, the Court concludes that independent claims 1, 11, and 16 of the '130 patent are essentially method claims[8] and have the following elements: (1) a "remote management server," that (2) registers a communication device, including by (3) associating the device with a preferred language, a primary communications group, and a secondary communications group, (4) receiving a "speech input," (5) determining to which communication devices the speech input should be sent based on an "account log," (6) determining the preferred language for each such device, (7) grouping the devices based on language, (8) if necessary, translating the speech input into the preferred language(s) of the devices, by group, and (9) sending the translated speech input to each device.  *See* '130 patent at 14:33-67.  All independent claims of the '130 patent are substantially similar, and the Court finds that claim 1 is representative.

As for the dependent claims, Talkdesk addresses these claims in abbreviated and summary fashion, *see* Dkt. No. 56 at 19, while Orion Labs merely summarizes the dependent claims in a lengthy footnote, *see* Dkt. No. 64 at 18 n.20.  As the operative complaint asserts no dependent

---

[8] Claim 11 is drafted in the form of a "system comprising" components, including "a memory" coupled to "a processor" that executes code "to perform a process." '130 patent at 15:49-56. Claim 16 is drafted in the form of a "memory device" storing "instructions" that when executed cause a "processor" to "perform a method." *Id.* at 16:44-46.

claims against Talkdesk, the Court does not consider them in this order.

Accordingly, for purposes of the eligibility analysis the Court will treat claim 1 of '130 patent as representative of all independent claims.

### 2. *Alice* Step One

Talkdesk contends that claim 1 of the '130 patent is directed to "the function of translation." Dkt. No. 56 at 16. Orion Labs responds that the '130 patent is not directed to translation generally, but rather a system and method for real-time translation of speech/voice communications in a group communication environment, where users and/or groups have different language preferences. Dkt. No. 64 at 22-23. Specifically, Orion Labs explains that the claims of the patent are directed to "a specific implementation of a communication system that involves, among other specific requirements, the provision of a remote management server to provide real-time translation for group communications by registering devices with language preferences and group settings, determining distribution groups, translating speech input into preferred languages, and sending the translated speech to the appropriate devices." *Id.* at 23, 24. According to Orion Labs, the claimed invention represents an improvement in distributed voice communication technology by overcoming existing limitations in the "flow and speed" of voice communications among users and/or groups with different preferred languages. *Id.* at 21.

As before, the Court begins by considering the focus of the claimed advance over the prior art. *See Trinity Info Media*, 72 F.4th at 1361. Construing the allegations of the operative complaint in Orion Labs's favor, the Court examines representative claim 1 of the '130 patent to determine whether it is directed to the purported advancement in voice communication technology that Orion Labs describes.

The Court is not persuaded that representative claim 1 is directed to the abstract idea of translation, as Talkdesk contends. As set forth above, claim 1 claims a method that requires registration of a communication device with a remote management server that logs certain identifying information for the device, including a preferred language, a primary communications group, and a secondary communications group. When the remote server receives a speech or voice communication from the communication device (i.e., speech input), it uses the identifying

information to determine the intended recipient devices of the communication and the different preferred languages, if any, associated with those devices (or groups of devices), translates the communication into the preferred language(s), and sends the translated communication to the recipient devices. While Talkdesk is correct that language translation is a function long-performed by humans, claim 1 of the '130 patent is not limited to that function, and Talkdesk's reading is not tethered to the language of the claim.[9]  *See TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1295 (Fed. Cir. 2020) (rejecting defendant's claim characterization that left out express claim limitations). The '130 patent purports to address a problem specific to voice communication technology, particularly among users in a group or between users in one group and those in another group, by using a remote management server to log specific information about the communication devices in the relevant groups, including their preferred languages, and to use that information to determine whether and into what languages a particular communication must be translated. At least this aspect of the claim appears to specify how the claimed result (i.e., "providing real-time translation for group communications") is achieved. *See Am. Axle & Mfg., Inc.*, 967 F.3d at 1302 (claim "must identify 'how' that functional result is achieved by limiting the claim scope to structures specified at some level of concreteness, in the case of a product claim, or to concrete action, in the case of a method claim").

Talkdesk argues that claim 1 relies on entirely conventional computing components and pre-existing technology to perform the claimed translation, without improving any of those components or technology. *See* Dkt. No. 56 at 18. But "[a] claim is not *directed to* an abstract idea simply because it uses conventional technology." *iLife Techs., Inc. v. Nintendo of Am., Inc.*, 839 F. App'x 534, 537 (Fed. Cir. 2021) (emphasis added); *see also Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373, 1380 (Fed. Cir. 2024) ("GoPro contends that the claims simply employ known or conventional components that existed in the prior art at the time of the invention. Even so, that *alone* does not necessarily mean that the claim is *directed to* an abstract

---

[9] As one indicia of Talkdesk's overgeneralized reading of claim 1 at an impermissibly high level of abstraction, the Court observes that Talkdesk's chart summarizing the elements of claim 1 lumps together several discrete limitations of the claim. *See* Dkt. No. 56 at 17-18.

idea at step one." (citations omitted)).  While the use of conventional components and pre-existing technology may pose other problems for the validity of claim 1, Talkdesk has not shown that their use in representative claim 1 necessarily renders that claim abstract.

 Read as whole, the Court cannot conclude that representative claim 1 is directed to the abstract idea of translation.  For this reason, the Court does not proceed to step two of the *Alice* analysis.  *See Contour IP Holding*, 113 F.4th at 1378 ("If the claims are not directed to an abstract idea, the *Alice* inquiry ends." (citing *Alice*, 573 U.S. at 217)).

### F.    Leave to Amend

Orion Labs argues that if the Court finds any elements of its claims are not sufficiently pled, it should be afforded leave to amend to address those deficiencies in a second amended complaint.  Dkt. No. 64 at 25.  Orion Labs does not indicate how it would amend any of its claims.  Talkdesk responds that amendment would be futile, given that the question of patent eligibility depends on the claims, as illuminated by the specification, and cannot be "rescued" by resort to extrinsic evidence.  Dkt. No. 67 at 14.

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003).  A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment.  *Eminence Cap.*, 316 F.3d at 1052.

Here, the Court has examined all claims of the Intelligent Agent Patents (the '430 patent, the '003 patent, and the '339 patent), as well as the allegations of the amended complaint supported by the declaration of Orion Labs's expert.  As noted above, Orion Labs agrees no discovery is required and no claim terms require construction.  In these circumstances, the Court agrees with Talkdesk that further amendment would be futile as to the claims of the Intelligent Agent Patents.

With respect to the Bot Messaging Patents (the '433 patent and the '636 patent) and the

United States District Court
Northern District of California

'733 patent, the Court has addressed only the independent claims of those patents and the dependent claims of those patents asserted against Talkdesk in the amended complaint. Having examined all of those claims, as well as the allegations of the amended complaint supported by the declaration of Orion Labs's expert, the Court agrees with Talkdesk that further amendment as to those claims would be futile, for the same reasons.

However, as the Court has not addressed the unasserted dependent claims of the Bot Messaging Patents or the unasserted dependent claims of the '733 patent, Orion Labs may amend its complaint to assert one or more of such claims, if it has a Rule 11 basis for doing so.

## IV. CONCLUSION

Based on the foregoing, Talkdesk's motion to dismiss based on patent ineligibility under 35 U.S.C. § 101 is granted, without leave to amend, with respect to:

1. U.S. Patent No. 10,110,430 (all claims);

2. U.S. Patent No. 10,462,003 (all claims);

3. U.S. Patent No. 10,924,339 (all claims);

4. U.S. Patent No. 10,897,433 (claims 1, 10, and 17);

5. U.S. Patent No. 11,127,636 (claims 1, 5, 10, 16, 17, and 18); and

6. U.S. Patent No. 11,258,733 (claims 1, 5, 8, and 15).

Talkdesk's motion to dismiss is otherwise denied, without prejudice to its ability to challenge the subject matter eligibility of any asserted patent claims at a later stage in the case, if appropriate.

If Orion Labs elects to file a second amended complaint, it must do so by **May 14, 2026.** If Orion Labs elects to proceed solely with respect to its existing claim that Talkdesk infringes the '130 patent, it must file a notice so advising the Court and Talkdesk by **May 14, 2026**, in which event, Talkdesk's response to that infringement claim shall be filed no later than **May 28, 2026**.

**IT IS SO ORDERED**.

Dated: April 30, 2026

Virginia K. DeMarchi
United States Magistrate Judge

36